# In the
# United States Court of Appeals
## for the Sixth Circuit

WILL MCLEMORE; MCLEMORE AUCTION COMPANY, LLC;
RON BRAJKOVICH; JUSTIN SMITH; BLAKE KIMBALL,

*Plaintiffs-Appellants,*

v.

ROXANNA GUMUCIO, in her official capacity as Executive Director of the
Tennessee Auctioneer Commission; JOHN LILLARD, in his official capacity as
Assistant Director of the Tennessee Auctioneer Commission; JEFF MORRIS,
Chair of the Tennessee Auctioneer Commission, in his official capacity; LARRY SIMS,
member of the Tennessee Auctioneer Commission, in his official capacity; ED KNIGHT,
Vice Chair of the Tennessee Auctioneer Commission, in his official capacity; DWAYNE ROGERS,
member of the Tennessee Auctioneer Commission, in his official capacity; JAY WHITE, in his
official capacity as a member of the Tennessee Auctioneer Commission,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville, No. 3:23-cv-01014.
The Honorable Aleta Arthur Trauger, Judge Presiding.

## BRIEF OF PLAINTIFFS-APPELLANTS

WENCONG FA
BEN STORMES
BEACON CENTER OF TENNESSEE
1200 Clinton Street, #205
Nashville, TN 37203
(615) 383-6431
wen@beacontn.org
ben.stormes@beacontn.org

*Attorneys for Appellants*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Sixth Circuit Rule 26.1, Appellants certify that no party to this appeal is a subsidiary or affiliate of a publicly owned corporation and that there is no publicly held corporation that owns 10% or more of its stock. Appellants also certify that no publicly owned corporation that is not a party to this appeal has a financial interest in the outcome.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ...............................x

STATEMENT OF JURISDICTION...........................................................1

STATEMENT OF THE ISSUE..................................................................1

INTRODUCTION .....................................................................................1

STATEMENT OF THE CASE.................................................................3

I.      Factual Background...................................................................3

        A.      Online Auctions and the Online Auctioneers.......................3

        B.      Tennessee Regulates Online Auctions .................................6

II.     Procedural History ....................................................................8

        A.      McLemore I..........................................................................8

        B.      The Proceedings Below........................................................10

SUMMARY OF ARGUMENT ..............................................................11

STANDARD OF REVIEW ....................................................................13

ARGUMENT ...........................................................................................13

I.      The District Court Correctly Held the Online Auctioneers Have
        Standing ......................................................................................13

        A.      The Unlicensed Online Auctioneers Have Standing............13

        B.      McLemore and His Company Have Standing ......................15

II.     The Online Auctioneers Properly Pleaded a First Amendment Claim .........17

        A.      The Online Auction Law is Subject to Heightened Scrutiny
                Because It Stifles Speech ...................................................17

                1.      The Online Auction Law regulates pure speech......................17

a.  Strict scrutiny is the proper standard because the Online Auction Law imposes content- and speaker-based restrictions on speech..............................24

b.  Even if the Online Auction Law were content-neutral, the district court erred in failing to apply intermediate scrutiny ......................................................26

2.  The Online Auction Law is not merely a regulation of conduct with an incidental burden on speech and heightened scrutiny would be warranted even if it were..........27

3.  The district court's dismissal rested on its misreading of this Court's decision in *Liberty Coins* and the Supreme Court's decisions in other cases................................29

B.  Heightened Scrutiny Warrants Reversal of the District Court's Decision..................................................................37

1.  Dismissal is improper in cases involving heightened scrutiny because the government bears the burden of justifying its law......................................................37

2.  The Online Auction Law cannot survive any form of heightened scrutiny ...............................................................39

CONCLUSION .......................................................................44

*Barr v. American Ass'n of Political Consultants*,
    591 U.S. 610 (2020)............................................................19

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001)............................................................19

*Bates v, State Bar of Arizona*,
    433 U.S. 350 (1977)............................................................38

*Bevan & Assocs., LPA v. Yost*,
    929 F.3d 366 (6th Cir. 2019) ......................................23, 34

*Billups v. City of Charleston*,
    961 F.3d 673 (4th Cir. 2020) ..................................*passim*

*Brown v. Entm't Merchs. Ass'n*,
    564 U.S. 786 (2011)......................................................36, 39

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*,
    447 U.S. 557 (1980)............................................................40

*CHKRS, LLC v. City of Dublin*,
    984 F.3d 483 (6th Cir. 2021)............................................13

*Cincinnati v. Discovery Network, Inc.*,
    507 U.S. 410 (1993)............................................................37

*City of Ladue v. Gilleo*,
    512 U.S. 43 (1994)..............................................................42

*Craigmiles v. Giles*,
    312 F.3d 220 (6th Cir. 2002) ............................................42

*Disc. Tobacco City & Lottery, Inc. v. United States*,
    674 F.3d 509 (6th Cir. 2012) ............................................29

*Edenfield v. Fane*,
    507 U.S. 761 (1993)..............................................35, 36, 44

*Edwards v. District of Columbia*,
    755 F.3d 996 (D.C. Cir. 2014)..........................................41

*Ellison v. Ford Motor Co.*,
847 F.2d 297 (6th Cir. 1988) ...........................................................14

*EMW Women's Surgical Center, P.S.C. v. Beshear*,
920 F.3d 421 (6th Cir. 2019) ...........................................................29

*Entertainment Productions, Inc. v. Shelby Cnty.*,
545 F. Supp. 2d 734 (W.D. Tenn. 2008) .........................................40

*ETW Corp. v. Jireh Publishing, Inc.*,
332 F.3d 915 (6th Cir. 2003) ...........................................................18

*Expressions Hair Design v. Schneiderman*,
581 U.S. 37 (2017).....................................................................33, 34

*Handy-Clay v. City of Memphis*,
695 F.3d 531 (6th Cir. 2012) ...........................................................13

*Hines v. Pardue*,
23-40483, 2024 U.S. App. LEXIS 24490 (5th Cir. Sept. 26, 2024) .11, 20, 40, 41

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010).............................................................................17

*Int'l Outdoor, Inc. v. City of Troy Mich.*,
974 F.3d 690 (6th Cir. 2020) .....................................................24, 26

*Junger v. Daley*,
209 F.3d 481 (6th Cir. 2000) ...........................................................19

*Kiser v. Kamdar*,
831 F.3d 784 (6th Cir. 2016) ....................................................*passim*

*Liberty Coins, LLC v. Goodman*,
748 F.3d 682 (6th Cir. 2014)....................................................*passim*

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).........................................................................13

*McCullen v. Coakley*,
573 U.S. 464 (2014).....................................................................25, 43

*McLemore v. Gumucio*,
3:19-cv-00530 (M.D. Tenn. Filed Jun. 26, 2019).........................8, 10

*McLemore v. Gumucio*,
    2019 U.S. Dist. LEXIS 122525 (M.D. Tenn. Jul. 23, 2019) ................................9

*McLemore v. Gumucio*,
    19-cv-530, 2020 U.S. Dist. LEXIS 228082 (M.D. Tenn. Dec. 4, 2020) ..............9

*McLemore v. Gumucio*,
    593 F. Supp. 3d 764 (M.D. Tenn. 2022) ................................9

*McLemore v. Gumucio*,
    No. 22-5458, 2023 U.S. App. LEXIS 15611 (6th Cir. Jun. 20, 2023)............9, 16

*McLemore v. Gumucio,*
    2023 U.S. App. LEXIS 21912 (6th Cir., Aug. 18, 2023)....................................10

*Minneapolis Star v. Minnesota Comm'r*,
    460 U.S. 575 (1983)................................................................................................37

*Moody v. NetChoice, LLC*,
    144 S. Ct. 2383 (2024)....................................................................................19, 39

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
    585 U.S. 755 (2018)....................................................................12, 29, 35, 36

*Ne. Ohio Coal. for the Homeless v. Husted*,
    837 F.3d 612 (6th Cir. 2016) ................................................................................16

*Norton Outdoor Adver., Inc. v. Vill. of St. Bernard*,
    99 F.4th 840 (6th Cir. 2024) ...........................................................................23, 34

*Otto v. City of Boca Raton*,
    981 F.3d 854 (11th Cir. 2020) ...............................................................19, 24, 27

*Pac. Coast Horseshoeing Sch. v. Kirchmeyer*,
    961 F.3d 1062 (9th Cir. 2020) ..............................................................22, 25, 28

*Pagan v. Fruchey*,
    492 F.3d 766 (6th Cir. 2007) ..................................................................... 40-41

*Parsons v. United States DOJ*,
    801 F.3d 701 (6th Cir. 2015)..........................................................................15, 16

*Planet Aid v. City of St. Johns*,
    782 F.3d 318 (6th Cir. 2015) ................................................................................26

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015)......................................................28, 37, 39

*Republican Party of Minn. v. White*,
536 U.S. 765 (2002)......................................................43

*Richland Bookmart, Inc. v. Knox Cnty.*,
555 F.3d 512 (6th Cir. 2009) .......................................29, 40

*Rubin v. Coors Brewing Co.*,
514 U.S. 476 (1995)......................................................41

*Schloendorff v. Society of N.Y. Hospital*,
211 N.Y. 125 (1914) .....................................................29

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) .............................................*passim*

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .....................................................15

*Telescope Media Grp. v. Lucero*,
936 F.3d 740 (8th Cir. 2019) ....................... 11-12, 20, 21, 22

*Thomas v. Collins*,
323 U.S. 516 (1945)......................................................20

*Tyler v. Hennepin Cnty.*,
143 S. Ct. 1369 (2023)..................................................15

*Vizaline, L.L.C. v. Tracy*,
949 F.3d 927 (5th Cir. 2020) .....................................17, 35

*United States v. O'Brien*,
391 U.S. 366 (1968)......................................................40

*United States v. Playboy Ent. Group, Inc.*,
529 U.S. 803 (2000)......................................................39

*United States v. Virginia*,
518 U.S. 515 (1996)......................................................40

*Wollschlaeger v. Governor of Fla.*,
848 F.3d 1293 (11th Cir. 2017) ..................................20, 28

# Statutes, Rules & Codes

28 U.S.C. § 1291 ...................................................................1

28 U.S.C. § 1331 ...................................................................1

28 U.S.C. § 1343 ...................................................................1

28 U.S.C. § 2201 ...................................................................1

28 U.S.C. § 2202 ...................................................................1

Cal. Educ. Code § 94904(a) ................................................22

Code of the City of Charleston § 29-2 ...............................21

Code of the City of Charleston § 29-58 .............................21

Minn. Stat. § 363A.11(1)(a)(1) ..........................................22

Minn. Stat. § 363A.17(3) ...................................................22

Ohio Rev. Code Ann. § 4728.01 .........................................30

Ohio Rev. Code Ann. § 4728.02 .........................................30

Tenn. Code Ann. § 47-18-104(a) ........................................43

Tenn. Code Ann. § 62-19-101 ...............................................7

Tenn. Code Ann. § 62-19-101(1) ...........................................7

Tenn. Code Ann. § 62-19-101(2) ...................................*passim*

Tenn. Code Ann. § 62-19-101(a)(1) .......................................7

Tenn. Code Ann. § 62-19-101(b) ...........................................7

Tenn. Code Ann. § 62-19-101(12) .............................7, 26, 43

Tenn. Code Ann. § 62-19-102 ........................................14, 18

Tenn. Code Ann. § 62-19-102(a)(1) ................................ 31-32

Tenn. Code Ann. § 62-19-103 .............................................14

Tenn. Code Ann. § 62-19-103(4) ...................................26, 42

Tenn. Code Ann. § 62-19-103(6) .........................................25

Tenn. Code Ann. § 62-19-103(7) .........................................25

Tenn. Code Ann. § 62-19-103(8).................................................25

Tenn. Code Ann. § 62-19-103(9).............................................26, 42

Tenn. Code Ann. § 62-19-103(10)...............................................25

Tenn. Code Ann. § 62-19-103(11)...............................................25

Tenn. Code Ann. § 62-19-111(i) ................................................16

Tenn. Code Ann. § 62-19-121 ...............................................7, 14

Tenn. Code Ann. § 62-19-126 ...........................................7, 14, 15

Tenn. Code Ann. § 62-19-126(a)(1)(3) .........................................14

Tenn. Comp. R. & Regs. 0160-03-.03(1).......................................16

Tex. Occ. Code § 801.002(5)(A) ...............................................20

Tex. Occ. Code § 801.351 .....................................................20

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument. This case presents several important and complex First Amendment issues. The resolution of those issues will affect the online auctioneers before the Court and may also provide guidance for other professionals in future cases. Oral argument would aid the Court in its careful consideration of these important issues.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over Appellants' federal claims pursuant to 28 U.S.C. §§ 1331, 1343. The Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, furnishes the basis for declaratory relief. This Court has jurisdiction because Appellants appeal from a final judgment disposing of the claims. *Id.* § 1291. The district court entered judgment on August 19, 2024. Entry of Judgment, RE 32, Page ID # 265. Appellants timely appealed on August 26, 2024. Notice of Appeal, RE 33, Page ID # 266.

## STATEMENT OF THE ISSUE

Whether the district court erred in dismissing the Online Auctioneers' First Amendment claims.

## INTRODUCTION

Individuals don't lose their First Amendment rights just because they speak to make money. Appellants are innovative online auctioneers who have served satisfied customers for years. Prospective buyers often can't see the items up for sale at an online auction, so online auctioneers must create informative, interesting, and enticing auctions through their speech. To that end, online auctioneers compose narratives, images, videos, and descriptions of the goods and real estate that they sell to inform the audience and generate bids.

Online auctions have flourished in Tennessee. In 2006, Tennessee enacted an exemption in its auction licensing law for fixed price or timed listings that allow bidding on an internet website but isn't a simulcast of a live auction. As a result, unlicensed online auctioneers were largely free to conduct online auctions, which grew in popularity.

Faced with growing competition, traditional auctioneers pressed the legislature to license online auctioneers. The legislature did. Even when its task force found virtually no evidence of harm from unlicensed online auctioneers, the legislature amended the law to require licenses for online auctioneers who, like Appellants, conduct extended-time online auctions. Meanwhile, the law continues to exempt fixed-time auction websites, like eBay, from the licensing requirement.

That poses a problem for the online auctioneers before this Court. Brajkovich, Smith, and Kimball now face civil and criminal penalties because they are unlicensed online auctioneers. McLemore and his company face the loss of those unlicensed auctioneers—who have worked diligently for the company for years.

The district court's dismissal of the online auctioneers' First Amendment claims rested on its reading of this Court's decision in *Liberty Coins, LLC v. Goodman*, 748 F.3d 682 (6th Cir. 2014). Yet the statute here defines auctions as a form of speech. The statute in *Liberty Coins* didn't define dealing in precious metals in the same way. Speech is an integral part of the work of the online auctioneers

before the Court. There wasn't any allegation that was true of the precious metal dealers in *Liberty Coins*.

In all, nothing in *Liberty Coins* calls for this Court to depart from what the Supreme Court has said: the government may not reduce a person's First Amendment rights simply by imposing a licensing scheme. Sister courts have applied that principle in cases vindicating the First Amendment rights of tour guides, videographers, and veterinarians. This Court should apply it to vindicate the First Amendment rights of the online auctioneers.

## STATEMENT OF THE CASE

### I.     Factual Background

#### *A.     Online Auctions and the Online Auctioneers*

For over a decade, online auctioneers in Tennessee were largely free to conduct online auctions without a license.[1] Although Tennessee has long regulated traditional auctions, it chose to enact an exemption for "fixed price or timed listings that allow bidding on an Internet website but that does not constitute a simulcast of a live auction" in 2006. Complaint, RE 1, Page ID # 6.

---

[1] Online auctions can take many forms. McLemore Auction Company lists items on its website and allows consumers to bid on them.

Around that time, Will McLemore started McLemore Auction Company, LLC, and became one of the first to conduct online auctions in Tennessee.[2] Complaint, RE 1, Page ID # 3. McLemore's success is attributable not just to his entrepreneurial spirit, but also to the dedication of those who work for his company. Among those individuals are Appellants Ron Brajkovich, Justin Smith, and Blake Kimball—online auctioneers who are unlicensed because Tennessee didn't require a license for online auctioneers until 2019 and was prohibited from enforcing the Online Auction Law for many years after.[3] *Id*. at Page ID # 3, 6.

Online auctions are different from traditional auctions. Because online auctions are not conducted in person, potential buyers cannot see the goods or real estate that are up for auction. *Id*. at Page ID # 5. This means that online auctioneers must provide descriptions—both accurate and enticing—of products up for auction. *Id*. To this end, online auctioneers create narratives, images, and descriptions to inform the audience of the characteristics and conditions of the goods and real estate up for auction. *Id*. These descriptions can take many forms such as providing information on the historical significance of an item or composing a narrative to

_____

[2] McLemore Auction Company, https://www.mclemoreauction.com/ (last visited September 27, 2024).

[3] For ease of reference this opening brief uses "Online Auctioneers" to refer to all Plaintiffs, "McLemore" or "McLemore Auction Company" to refer Plaintiffs Will McLemore and McLemore Auction Company, LLC, and "Unlicensed Online Auctioneers" to refer to Plaintiffs Ron Brajkovich, Justin Smith, and Blake Kimball. It also uses "the Commission" or "the government" to refer to all Defendants.

describe the importance of an artist if the auctioneer is auctioning a work of art created by that artist. *Id*.

McLemore Auction Company creates narratives and descriptions for the items they auction. One example of such a narrative accompanied McLemore's listing of items owned by Jim Thiel. *Id*. Mr. Thiel was a revered speaker designer who used the auctioned items in his lab before his death. McLemore Auction Company chose to include information about Mr. Thiel in its descriptions of the auctioned items to make the items more desirable to high-end enthusiasts. *Id*.

The Unlicensed Online Auctioneers submitted declarations testifying that they exercise a great deal of creativity in the course of their work. *See* Declaration of Blake Kimball, RE 14-1, Page ID # 105–06; Declaration of Justin Smith, RE 14-2, Page ID # 108; Declaration of Ron Brajkovich, RE 14-3, Page ID # 110–11; *see also* Opp. to Mot. to Dismiss, RE 22, Page ID # 204 & n.4 (incorporating declarations); *id.* at Page ID # 207–08 (same).

Blake Kimball, for instance, has essentially played the part of a film director by selecting backdrops or lighting to highlight a car's exterior or filmed videos to show off a car's engine. Declaration of Blake Kimball, RE 14-1, Page ID # 105–106. These descriptions and narratives can affect the price at which items are sold and ensure that the online auctions at McLemore Auction Company are as informative, enticing, and interesting as possible.

*B.     Tennessee Regulates Online Auctions*

After numerous failed attempts to regulate online auctions, the Tennessee General Assembly in 2018 enacted legislation creating the Tennessee Task Force on Auction Law Modernization ("Task Force"). *See* 2018 Pub. Ch. 941. One of the purposes of the Task Force was to recommend changes to auctioneer licensing laws. *Id*. At a meeting in August 2018, Task Force members publicly admitted that they didn't know how the public was harmed by online auctions. Complaint, RE 1, Page ID # 6. The vice president of the Tennessee Auctioneer Association offered a different justification, testifying that "there's a real need to look at oversight for online auctions because we can all agree that's not going to diminish in its activity." Tenn. Dep't of Comm. and Ins., Auctioneer Task Force Meeting (Aug. 27, 2018) at 34:25–34:32.[4]

Data compiled by the Task Force confirmed that online auctions posed no significant threat to the public. The Task Force's report included the number of complaints in fiscal years 2016, 2017, and 2018. The numbers showed that only 15 of the 117 complaints about auctioneers during that time were about online auctions, and even fewer (three of the 117) of the complaints were about the extended-time online auctions that the Online Auctioneers conduct. Complaint, RE 1, Page ID # 6.

---

[4]    https://www.youtube.com/watch?v=UpDp7OBc0Wc&t=7347s    (last    visited, October 5, 2024).

Yet the Task Force recommended regulating online auctions, and the General Assembly pressed forward with a licensing requirement for online auctions ("Online Auction Law"). *See* 2019 Tenn. Pub. Ch. 471 (codified at Tenn. Code Ann. § 62-19-101 *et seq.*).

The Online Auction Law changed the definition of an auction to include electronic exchanges i.e., online auctions:

> Auction means a sales transaction conducted by oral, written, or *electronic* exchange between an auctioneer and members of the audience, consisting of a series of invitations by the auctioneer for offers to members of the audience to purchase goods or real estate, culminating in the acceptance by the auctioneer of the highest or most favorable offer made by a member of the participating audience.

Tenn. Code Ann. § 62-19-101(2) (emphasis added). The law makes it unlawful for a person to: "[a]ct as, advertise as, or represent to be an auctioneer without holding a valid license issued by the commission." *Id*. § 62-19-101(a)(1). It also provides that "[a]ll auctions arranged by or through a principal auctioneer must be conducted exclusively by individuals licensed under this chapter." *Id*. § 62-19-101(b). Conducting an online auction without a license is a Class C misdemeanor, *id*. § 62-19-121, and violators are also subject to a civil fine of up to $2,500. *Id*. § 62-19-126.

The Online Auction Law also limits the 2006 exemption for online auctions by changing the definition of "timed listings" to exclude online auctions in which goods are offered for sale for a fixed time that isn't "extend[ed] based on bidding activity." *Id*. § 62-19-101(12). In practice, this means that the Online Auctioneers

must obtain a license for their extended-time online auctions, but that workers at companies like eBay, which conduct fixed-time online auctions, remain exempt from the licensing requirement. Members of the Task Force admitted that "leaving the fixed time and leaving the extended time as being different is somewhat problematic," Tenn. Dep't of Comm. and Ins., Auctioneer Task Force Meeting (Nov. 05, 2018) at 32:36-32:43,[5] but then explained that the primary reason they were carving out fixed-time auctions from the law was "so we don't kick an eBay's nest." *Id*. at 41:16-22.

## II. Procedural History

### A. *McLemore I*

Before the Online Auction Law went into effect in 2019, McLemore and his company filed a civil rights lawsuit against the Commission in the United States District Court for the Middle District of Tennessee.[6] *See McLemore v. Gumucio*, 3:19-cv-00530 (M.D. Tenn. Filed Jun. 26, 2019) ("*McLemore I*"). McLemore raised federal claims under the Free Speech Clause of the First Amendment, the Dormant Commerce Clause, the Privileges or Immunities Clause of the Fourteenth Amendment, and a free speech claim under the Tennessee Constitution. The district court denied the Commission's motion to dismiss the First Amendment claim, but

---

[5] https://www.youtube.com/watch?v=_JRUrRJgPA8 (last visited October 5, 2024).
[6] *McLemore I* involved other plaintiffs who not before the Court in this case. The Unlicensed Online Auctioneers were not plaintiffs in *McLemore I*.

eventually granted preliminary relief and summary judgment to McLemore and the other plaintiffs solely on their Dormant Commerce Clause claim. *McLemore v. Gumucio*, 593 F. Supp. 3d 764, 783 (M.D. Tenn. 2022) (granting summary judgment to plaintiffs), vacated by *McLemore v. Gumucio*, No. 22-5458, 2023 U.S. App. LEXIS 15611 (6th Cir. Jun. 20, 2023); *McLemore I*, 19-cv-530, 2020 U.S. Dist. LEXIS 228082, at *57 (M.D. Tenn. Dec. 4, 2020) (denying Commission's motion to dismiss First Amendment claim); *McLemore I*, 2019 U.S. Dist. LEXIS 122525, at *7–8, 40 (M.D. Tenn. Jul. 23, 2019) (discussing the Court's previous issuance of a temporary restraining order and granting Plaintiffs' Motion for Preliminary Injunction). In its decision issuing judgment in favor of McLemore, the district court refrained from ruling on the First Amendment claim "so as to save scarce judicial resources and to avoid deciding unnecessary constitutional questions." *McLemore I*, 593 F. Supp. 3d at 782.

On appeal, this Court reversed the district court and held that the plaintiffs in *McLemore I* did not have standing to bring a Dormant Commerce Clause claim. *McLemore v. Gumucio*, No. 22-5458, 2023 U.S. App. LEXIS 15611, at *7 (6th Cir. June 20, 2023). Relevant here, however, this Court declined to address McLemore's First Amendment claim because it (incorrectly) thought that the lower court dismissed the claim as moot. *Id*. This Court then vacated the district court's decision and remanded with instructions to dismiss the case for lack of jurisdiction. *Id*. at *8;

*see also McLemore I v. Gumucio,* 2023 U.S. App. LEXIS 21912 (6th Cir., Aug. 18, 2023) (rehearing denied). The parties agree that the district court in *McLemore I* never entered a final ruling on the First Amendment claim and that this Court didn't address the claim on appeal. *See* Memorandum Opinion, RE 30, Page ID # 248.

B.      *The Proceedings Below*

The Online Auctioneers filed this civil rights lawsuit in the United States District Court for the Middle District of Tennessee. Their Complaint alleges that Tennessee's Online Auction Law targets and restricts their free speech and violates the First Amendment. Complaint, RE 1, Page ID # 9–11. The Online Auctioneers also moved for a preliminary injunction while the Commission moved to dismiss.

The district court granted the Commission's Motion to Dismiss and denied the Online Auctioneers' Motion for Preliminary injunction. Memorandum Opinion, RE 30, Page ID # 262. RE. The district court held that the Online Auctioneers had standing to pursue their First Amendment claims. *Id*. at Page ID # 251–54. Yet the court dismissed the case because it thought that the First Amendment wasn't implicated. *Id*. at Page ID # 261. The district court primarily relied on this Court's opinion in *Liberty Coins, LLC v. Goodman*, 748 F.3d 682 (6th Cir. 2014) to hold that the Online Auction Law regulated "transactions" rather than speech. *Id*. at Page ID # 257-259. As a result, the district court chose not to apply the heightened scrutiny typically afforded to plaintiffs in free speech cases and instead held that the Online

Auction Law survived the more lenient standard of rational basis review. *Id*. at Page ID # 261. The Online Auctioneers timely appealed the district court's dismissal.

## SUMMARY OF ARGUMENT

The district court's dismissal should be reversed. *First*, the district court started off on the right track by correctly holding that the Online Auctioneers have standing to pursue their First Amendment claims. The Online Auction Law harms the Unlicensed Online Auctioneers by outlawing the way they have made their living for years. The law injures McLemore and his company because they face financial and reputational harm that would flow from the loss of valuable workers and because the Online Auction Law places a host of continuing obligations on licensed auctioneers.

*Second*, the district court's dismissal was based on its mistaken belief that the law didn't implicate the Online Auctioneers' free speech rights. The Online Auction Law directly burdens the speech rights of the Online Auctioneers because it defines auctions as a form of speech and because its effect is to prohibit the Online Auctioneers from engaging in speech that is integral to their work. Apply those principles, sister courts have applied First Amendment scrutiny to laws pertaining to tour guides, videographers, and veterinarians. *Billups v. City of Charleston*, 961 F.3d 673, 683 (4th Cir. 2020) (tour guides); *Hines v. Pardue*, 23-40483, 2024 U.S. App. LEXIS 24490, at *15 (5th Cir. Sept. 26, 2024) (veterinarian); *Telescope Media Grp.*

*v. Lucero*, 936 F.3d 740, 754 (8th Cir. 2019) (videographers). This Court should afford the Online Auctioneers the same First Amendment protection. The district court's decision not to apply First Amendment scrutiny was based on its misreading of several precedents including (most critically) this Court's decision in *Liberty Coins*. Yet *Liberty Coins* has never stood for the principle that occupational licensing laws that stifle speech get a free pass from First Amendment scrutiny. *See Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 768 (2018) (States have no power to reduce First Amendment rights by simply imposing a licensing requirement). Rather, this Court chose not to apply First Amendment scrutiny in *Liberty Coins* because that case, unlike this one, neither involved a law that defined the profession (metal dealing) by reference to speech nor presented an argument that the law barred the plaintiffs from engaging in speech in the normal course of their work.

*Third*, heightened scrutiny requires a remand to the district court. The standard places the burden on the government to justify its law with evidence—a burden that the government can't meet at the pleadings stage. *See Kiser v. Kamdar*, 831 F.3d 784, 790 (6th Cir. 2016). Indeed, the government may not be able to satisfy heightened scrutiny at any stage—since evidence gathered by the government's task force didn't support a consumer protection rationale and the Online Auction Law's host of exemptions belie any assertion that the law furthers that interest.

## STANDARD OF REVIEW

This Court reviews the district court's dismissal de novo. *Kiser v. Kamdar*, 831 F.3d 784, 787 (6th Cir. 2016). To survive a motion to dismiss, a plaintiff must allege facts to state a claim to relief that is plausible on its face. *Id.* At this stage, the court construes "the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012).

## ARGUMENT

## I. The District Court Correctly Held the Online Auctioneers Have Standing

"To establish standing, the plaintiff must allege three well-known ingredients: that the plaintiff has suffered an injury; that the injury traces to the defendant's actions; and that a ruling for the plaintiff would likely redress this injury." *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 488 (6th Cir. 2021). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

### A. The Unlicensed Online Auctioneers Have Standing

As the district court noted, the question of whether practicing unlicensed auctioneers have standing to challenge a law that requires them to obtain a license is

straightforward. Memorandum Opinion, RE 30, Page ID # 252. Here, it is undisputed that it is unlawful to conduct online auctions without a license in Tennessee, Tenn. Code Ann. § 62-19-102, and that the Commission is the entity charged with enforcing the Online Auction Law. Tenn. Code Ann. § 62-19-126. The Unlicensed Online Auctioneers have alleged that they are conducting online auctions without licenses and that no applicable exemption under the statute applies to them. Complaint, RE 1, Page ID # 8[7]; Tenn. Code Ann. § 62-19-103 (list of exemptions). Consequently, the Unlicensed Online Auctioneers are subject to civil and criminal penalties. Tenn. Code Ann. § 62-19-121; *Id.* § 62-19-126(a)(1)(3). As the district court noted, the fact that the Commission has not initiated an enforcement action against the Unlicensed Online Auctioneers doesn't deprive them of an Article III injury and nothing in the proceeding below suggests the Commission will not enforce the licensure requirement. Memorandum Opinion, RE 30, Page ID # 253;

---

[7] As the district court noted, the Unlicensed Online Auctioneers' declarations further establish that they are not subject to any exemptions under the Online Auction Law, including the exemption for auctioneers generating under $25,000 per year. Memorandum Opinion, RE 30, Page ID # 253; Declaration of Blake Kimball, RE 14-1, Page ID # 105–06; Declaration of Justin Smith, RE 14-2, Page ID # 108; Declaration of Ron Brajkovich, RE 14-3, Page ID # 110–11. Moreover, as the district court suggests, the Online Auctioneers may amend their complaint to incorporate the material in their declarations if the litigation continues. *Id.*; *see also Ellison v. Ford Motor Co.*, 847 F.2d 297, 300 (6th Cir. 1988) (stating "[t]he Rules put forth a liberal policy of permitting amendments in order to ensure determination of claims on their merits.").

(citing *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 159 (2014)) (citations omitted).

The Unlicensed Online Auctioneers' injury is thus directly traceable to the Commission and redressable by a favorable court decision. *See* Tenn. Code Ann. § 62-19-126 (Commission enforces Tennessee auction laws). The Unlicensed Online Auctioneers therefore have standing to bring their First Amendment challenge.

### B. *McLemore and His Company Have Standing*

The Online Auction Law makes it illegal for McLemore's employees to conduct online auctions, even though they have demonstrated their honesty, good faith, and competence through years of working for McLemore. The Online Auction Law thus threatens significant financial and reputational harm to both McLemore and his company. Financial harm and reputational injury are both sufficient to satisfy the injury-in-fact requirement for standing purposes. *See Tyler v. Hennepin Cnty*., 143 S. Ct. 1369, 1374–75 (2023); *Parsons v. United States DOJ*, 801 F.3d 701, 711 (6th Cir. 2015). As a result of the Online Auction Law, McLemore and his company suffer sufficient injuries for Article III standing.

Although McLemore's financial and reputational harms satisfy the injury-in-fact requirement for standing purposes, the district court also noted that McLemore's current license does not preclude the existence of additional harms stemming from

the Online Auction Law.[8] For instance, McLemore must renew his license every two years to keep conducting online auctions, Tenn. Code Ann. § 62-19-111(i), and the Online Auction Law places affirmative obligations including a continuing education requirement. *Id*.; *see* Tenn. Comp. R. & Regs. 0160-03-.03(1). Failure to abide by these requirements would make it unlawful for McLemore to conduct online auctions.

Even assuming McLemore did not have standing, the district court correctly held that the Unlicensed Online Auctioneers' standing allows this case to move forward. Memorandum Opinion, RE 30, Page ID # 254; *see Parsons*, 801 F.3d at 710 (6th Cir. 2015) ("[O]nly one plaintiff needs to have standing in order for the suit to move forward."). Although standing must exist for each separate claim, "[w]hen one party has standing to bring a claim, the identical claims brought by other parties to the same lawsuit are justiciable." *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 623–24 (6th Cir. 2016). Because McLemore's and his company's First Amendment claims are identical to the Unlicensed Online Auctioneers' First Amendment claims, this case is justiciable. As the district court noted, "[d]ismissing McLemore from the case would not meaningfully change the litigation's scope or

---

[8] This Court's previous finding that McLemore lacked standing for a claim under the Dormant Commerce Clause due to alleged extraterritorial applications of the Online Auction Law is inapplicable to the First Amendment issue in this case. *See McLemore v. Gumucio*, No. 22-5458, 2023 U.S. App. LEXIS 15611, at *6 (6th Cir. June 20, 2023); Memorandum Opinion, RE 30, Page ID # 254.

the ultimate substantive question of whether the licensure scheme comports with the First Amendment." Memorandum Opinion, RE 30, Page ID # 255. At bottom, the Online Auctioneers have standing to vindicate their First Amendment rights.

## II.    The Online Auctioneer Properly Pleaded a First Amendment Claim

### A.    *The Online Auction Law is Subject to Heightened Scrutiny Because It Stifles Speech*

#### 1.    The Online Auction Law regulates pure speech

The threshold question is whether the Online Auction Law "regulate[s] only speech, restrict[s] speech only incidentally to [its] regulation of non-expressive professional conduct, or regulate[s] only non-expressive conduct." *Vizaline, L.L.C. v. Tracy*, 949 F.3d 927, 931 (5th Cir. 2020). The Online Auction Law is a restriction on pure speech for two reasons. First, the law facially targets speech. The requirements kick in as soon as there is an "exchange" — oral, written, or electronic — "between an auctioneer and members of the audience." Tenn. Code Ann. § 62-19-101(2). Second, the Online Auction Law would regulate speech, even if the law were facially neutral, because it has the effect of stifling the Online Auctioneers' speech.

As the Supreme Court explained in *Holder v. Humanitarian Law Project*, the First Amendment applies with full force when "the conduct triggering coverage under the statute consists of communicating a message." 561 U.S. 1, 28 (2010).

That's the case here. The Online Auction Law prohibits unlicensed individuals from conducting auctions. *See* Tenn. Code Ann. § 62-19-102. The law defines an "auction," in relevant part, as a "sales transaction conducted by oral, written, or electronic *exchange* between an auctioneer and members of the audience, consisting of a series of *invitations* by the auctioneer for *offers* to members of the audience to purchase goods or real estate." *Id.* § 62-19-101(2) (emphasis added). In other words, speech is what triggers coverage under the Online Auction Law. *See id.*; *see also* Complaint, RE 1, Page ID # 5 (noting deposition testimony from Commission Director Gumucio that it is impossible to have an auction without an oral, written, or electronic communication).

It's true that Online Auction Law prohibits unlicensed online auctioneers from speaking as a part of a "sales transaction." Tenn. Code Ann. § 62-19-101(2). But speech "is protected even though it is carried in a form that is sold for profit." *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915, 924 (6th Cir. 2003). It's unsurprising that "commercial speech is entitled to significant First Amendment protection." *Id.* at 925. An "economic motive" springs "a great deal of vital expression." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) (citing cases).

Nor does the fact that the Online Auctioneers engage in *electronic* exchange of information alter the First Amendment analysis. Much of communication today occurs electronically and there's no doubt that it's protected by the First Amendment

all the same. *See, e.g.*, *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2394 (2024) (the First Amendment "does not go on leave when social media are involved"); *Junger v. Daley*, 209 F.3d 481, 485 (6th Cir. 2000) (computer source code is protected by the First Amendment). The First Amendment also protects the Online Auctioneers' rights to convey information about both price and product to audience members. "Facts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Sorrell*, 564 U.S. at 570 (rejecting the government's argument that pharmacy records were simply a "commodity" that was entitled to no more "First Amendment protection than beef jerky") (quotation marks omitted). As the Supreme Court observed, if "disclosing and publishing information do not constitute speech, it is hard to imagine what does." *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) (internal quotation marks omitted); *see also Otto v. City of Boca Raton*, 981 F.3d 854, 866 (11th Cir. 2020)("If speaking to clients is not speech, the world is truly upside down.").[9]

Even if the Online Auction Law didn't facially restrict speech, the Online Auctioneers have still pleaded a violation of their First Amendment rights.

---

[9] The Commission may argue that the Online Auctioneers lose their First Amendment rights merely because the pricing information in their auctions are automated to reflect the latest bidding activity. But both commercial and political speech can come in automated phone calls, emails, and the like. The Supreme Court has never held that automated speech loses its First Amendment protection. *See, e.g.*, *Barr v. American Ass'n of Political Consultants*, 591 U.S. 610, 618 (2020) (robocalls protected by the First Amendment).

"Speech is not conduct just because the government says it is." *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 752 (8th Cir. 2019); *see also Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1308–09 (11th Cir. 2017) (the enterprise of "labeling certain verbal or written communications speech and others conduct is unprincipled and susceptible to manipulation.") (internal quotation marks omitted). For that reason, courts do not blindly "follow whatever label a state professes," but instead "consider a 'restriction's effect, as applied, in a very practical sense.'" *Hines v. Pardue*, 23-40483, 2024 U.S. App. LEXIS 24490, at *13 (5th Cir. Sept. 26, 2024) (quoting *Thomas v. Collins*, 323 U.S. 516, 536 (1945)). The Fifth Circuit, for instance, recently ruled for a veterinarian in a First Amendment challenge to a law that required veterinarians to physically examine an animal before they can practice veterinary medicine. *Hines*, 2024 U.S. App. LEXIS 24490, at *5–6 (citing Tex. Occ. Code § 801.351). The law defined "practice of veterinary medicine" as "diagnosis, treatment, correction, change, manipulation, relief, or prevention of animal disease, deformity, defect, injury, or other physical condition, including the prescription or administration of a drug, biologic, anesthetic, apparatus, or other therapeutic or diagnostic substance or technique." Tex. Occ. Code § 801.002(5)(A). Yet the Fifth Circuit applied First Amendment scrutiny because "[i]n effect, the regulation *only* kicked in when Dr. Hines began to share his opinion with his patient's owner." *Hines*, 2024 U.S. App. LEXIS 24490, at *15 (emphasis in original).

Other courts trod a similar path. The Fourth Circuit invalidated, on First Amendment grounds, Charleston's city ordinance stating that no "person shall act or offer to act as a tour guide in [Charleston] for hire unless he or she has first passed a written examination and is licensed by the [C]ity's office of tourism management as a registered tour guide." *Billups v. City of Charleston*, 961 F.3d 673, 677 (4th Cir. 2020) (citing Code of the City of Charleston § 29-58 (2016)). The city defined tour guide, in relevant part, as "any person who acts or offers to act as a guide for hire through any part of the districts," and defined a tour as "the conducting of or the participation in sightseeing in the districts for hire or in combination with a request for donations." *Id.* at 677 & n.1 (citing Code of the City of Charleston § 29-2). Yet the Fourth Circuit looked beyond these conduct-based definitions and recognized that the ordinance had the "undoubted[]" effect of burdening protected speech, "as it prohibits unlicensed tour guides from leading paid tours — in other words, speaking to visitors — on certain public sidewalks and streets." *Id.* at 683.

The Eighth Circuit afforded First Amendment protections to videographers who wanted to produce wedding videos, but only of opposite-sex weddings. *See Telescope*, 936 F.3d at 748, 754. The videographers challenged the application of the Minnesota Human Rights Act, which made it "an unfair discriminatory practice . . . to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation

because of . . . sexual orientation." *Id.* at 748 (citing Minn. Stat. § 363A.11, subdiv. 1(a)(1)); *see also* Minn. Stat. § 363A.17(3) (similar). The statute itself didn't mention speech, and the Eighth Circuit noted that "producing a video requires several actions that, individually, might be mere conduct: positioning a camera, setting up microphones, and clicking and dragging files on a computer screen." *Id.* at 752. But what mattered for the Court's decision to apply First Amendment scrutiny was that "these activities come together to produce finished videos that are media for the communication of ideas." *Id.* (cleaned up).

Finally, the Ninth Circuit reviewed a law that required certain students seeking to attend private postsecondary schools pass an "independently administered examination from the list of examinations prescribed by the United States Department of Education." *Pac. Coast Horseshoeing Sch. v. Kirchmeyer*, 961 F.3d 1062, 1066 (9th Cir. 2020) (citing Cal. Educ. Code § 94904(a)). The district court held that the law "regulates only conduct—the forming of an enrollment agreement." *Id.* at 1067. But the Ninth Circuit reversed on grounds that the regulation "squarely implicates the First Amendment" because the Act, when viewed in its entirety, "also regulates what kind of educational programs different institutions can offer to different students." *Id.* at 1069.

The Online Auction Law here also, in effect, restricts speech. Online auctions not only solicit offers from their prospective clients, but also advertise their products

to would-be buyers. *See Bevan & Assocs., LPA v. Yost*, 929 F.3d 366, 369–70 (6th Cir. 2019) (solicitation ban violated First Amendment); *Norton Outdoor Adver., Inc. v. Vill. of St. Bernard*, 99 F.4th 840, 842 (6th Cir. 2024) (restriction on advertising violated First Amendment). The Online Auctioneers in this case craft compelling descriptions and narratives designed to inform the audience and generate more interest in the items that they sell. *See supra* at Statement of the Case I.A; *See also Sorrell*, 564 U.S. at 570 ("[C]reation and dissemination of information are speech within the meaning of the First Amendment."). McLemore Auction Company creates narratives detailing the significance of the items it puts up for auction. Complaint, RE 1, Page ID # 5. As one example, the company has written listings that emphasized an item's previous owner—a revered speaker designer who used the auctioned items in his lab before his death—because it believed doing so would make the items more desirable to high-end enthusiasts. *Id.* The Unlicensed Online Auctioneers engage in the same type of speech. Justin Smith has crafted narratives for the company and used his editorial discretion to take auctioned cars to the Nashville Fairgrounds so that he could take pictures that he believes would portray them in the best light for his customers. Declaration of Justin Smith, RE 14-2, Page ID # 108. Ron Brajkovich crafts descriptions and uses editorial discretion to select pictures about items up for auction. Declaration of Ron Brajkovich, RE 14-3, Page ID # 110–11. In his view, pictures are important for any item sold at auction—but

particularly so for unique vehicles like a 1951 custom Chevrolet pickup truck that he has listed for auction. *Id.* at Page ID # 111. Blake Kimball has acted almost as a film director—selecting backdrops to make cars more enticing to buyers and putting dome lights on a Dodge Challenger to capture its majestic appearance at night. Declaration of Blake Kimball, RE 14-1, Page ID # 105–106.

In all, the Online Auction Law burdens pure speech both on its face and in its effect. The Online Auctioneers are thus entitled to have their claim reviewed under heightened scrutiny.

> a.    *Strict scrutiny is the proper standard because the Online Auction Law imposes content- and speaker-based restrictions on speech*

Strict scrutiny is the proper standard by which courts review content- and speaker-based restrictions on commercial speech. *Int'l Outdoor, Inc. v. City of Troy Mich.*, 974 F.3d 690, 706 (6th Cir. 2020). The Online Auction Law is content-based because, in many ways, it "regulate[s] certain subject matters but not others." *Otto*, 981 F.3d at 862 (observing that a law allowing Florida doctors to ask patients about anything other than a firearm is a content-based restrict on speech).

The law facially restricts what sellers can say about their products. Unlicensed persons may state a purchase price for a product but may not invite audience members to bid on the same product. *See* Tenn. Code Ann. § 62-19-101(2). The Online Auctioneers don't need a license to speak if they listed and described items

for sale at a fixed price. They need a license under Tennessee Law because of their speech "consist[s] of a series of invitations by the auctioneer for offers to members of the audience to purchase goods or real estate, culminating in the acceptance by the auctioneer of the highest or most favorable offer made by a member of the participating audience." *Id.*

The Online Auction Law is also content-based because it only applies to offers to "purchase goods or real estate." Tenn. Code Ann. § 62-19-101(2). As a result, the Online Auctioneers wouldn't need a license to invite audience members to bid on intangible property, such as on a screenplay auction website or naming rights for a new species. In all, the enforcement of the Online Auction Law requires the enforcement authorities to "'examine the content of the message that is conveyed to determine whether' a violation has occurred," and is thus a content-based regulation of speech. *McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (citation omitted).

The Online Auction Law is also content- and speaker-based because it is "riddled with exceptions" that turn on "1) the content of what is being taught, or (2) the identity of the speaker." *Kirchmeyer*, 961 F.3d at 1070. For instance, the law exempts certain sales of "nonrepairable or salvage vehicles," livestock, and tobacco. Tenn. Code Ann. §§ 62-19-103(6)–(8), 62-19-103(10)–(11). The infamous eBay exemption allows unlicensed persons to speak if only they "offer[] goods for sale with a fixed ending time and date that does not extend based on bidding activity."

*Id.* §§ 62-19-101(12), 62-19-103(9). Yet another exemption allows unlicensed individuals to speak as long as they are not compensated and are conducting the auction "on behalf of a political party, church, or charitable corporation or association." Tenn. Code Ann. § 62-19-103(4). Thus, both the law and its exemption distinguish between speech based on its content and speaker. This Court should apply strict scrutiny.

> **b.** *Even if the Online Auction Law were content-neutral, the district court erred in failing to apply intermediate scrutiny*

This Court should reverse and remand even if the Online Auction Law were content-neutral. That's because content-neutral restrictions on speech are still subject to intermediate scrutiny. *Planet Aid v. City of St. Johns*, 782 F.3d 318, 326 (6th Cir. 2015) ("Regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny.") (cleaned up); *see also Int'l Outdoor*, 974 F.3d at 703 ("[T]he intermediate-scrutiny standard applicable to commercial speech . . . applies only to a speech regulation that is content-neutral on its face.").

Here, the district court applied only rational basis. Memorandum Opinion, RE 30, Page ID # 261. This Court should thus reverse with instructions for the district court to apply heightened scrutiny on remand. *See Kiser*, 831 F.3d at 790.

2. The Online Auction Law is not merely a regulation of conduct with an incidental burden on speech and heightened scrutiny would be warranted even if it were

The Online Auction Law imposes more than an "incidental" burden on speech. Classic examples of regulations of conduct with an incidental burden on speech are laws against discriminatory hiring, ordinances against setting outdoor fires, and antitrust laws against agreements in restraint of trade. *Otto*, 981 F.3d at 865 (citing *Sorrell*, 564 U.S. at 567). Such laws impose only an incidental burden on speech because they are connected to "regulation of separately identifiable conduct" and might only "sweep up some speech at their margins." *Id.* (noting that a law against discriminatory hiring would also prohibit a "White Applicants Only" sign).

By contrast, a law "sanction[s] speech directly, not incidentally" where "the only 'conduct' at issue is speech." *Id.* at 866. The Court in *Billups* for example, held that a city ordinance requiring tour guides offering paid tours in Charleston's historic districts to obtain a license—which necessitated passing a test and jumping through other hoops—imposed a burden on speech that was more than incidental because it "completely prohibit[ed] unlicensed tour guides from leading visitors on paid tours—an activity which, by its very nature, depends upon speech or expressive conduct." *Billups*, 961 F.3d at 683. So too here. As discussed above (at Argument II.A.1), online auctions involve narratives, pictures, and videos designed to garner

27

interest. What's more, the Commission defines "auction" by reference to speech. Tenn. Code Ann. § 62-19-101(2). As the Commission's executive director put it in her 30(b)(6) deposition for the Commission in *McLemore I*, it's impossible to have an auction without any form of communication. The director is correct. Saying that the Online Auction Law's restriction on communication is "merely incidental to speech is like saying that limitations on walking and running are merely incidental to ambulation." *Wollschlaegar*, 848 F.3d at 1308.

There's another reason that the Online Auction Law is not merely a regulation of conduct with an incidental burden on speech. The reduced scrutiny afforded to incidental burdens does not apply to laws that "imposes a burden based on the content of the speech and identity of the speaker." *See Sorrell*, 564 U.S. at 567. And the Online Auction Law—both in its definition of "auction[s]" and through its long list of exemptions—discriminate on the basis of speaker and content. *See supra* at Argument II.A.1.a; *Kirchmeyer*, 961 F.3d at 1070–71 (noting that the statute's exceptions "demonstrate that the Act does more than merely impose an incidental burden on speech: it 'target[s] speech based on its communicative content'") (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)).

At all events, the district court erred even if the Online Auction Law were a regulation of conduct with an incidental burden on speech. The court below applied only rational basis review, but this Court applies intermediate scrutiny to such laws.

*See Richland Bookmart, Inc. v. Knox Cnty.*, 555 F.3d 512, 520–22 (6th Cir. 2009); *see also Disc. Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 538 n.10 (6th Cir. 2012).[10]

> ### 3. The district court's dismissal rested on its misreading of this Court's decision in *Liberty Coins* and the Supreme Court's decisions in other cases

The district court's dismissal veered off course at three junctions. *First*, the court's decision misread this Court's decision in *Liberty Coins, LLC v. Goodman*, 748 F.3d 682 (6th Cir. 2014). That decision is not on point here because metal dealers, unlike online auctioneers, don't necessarily engage in speech. *Second*, the court below misunderstood the import of the Supreme Court's decision in *National Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018) (*NIFLA*). True enough, the professionals in that case served in an advisory function. But the broader principle is that the constitutional protections for free speech don't evaporate

---

[10] This Court's more recent decision in *EMW Women's Surgical Center, P.S.C. v. Beshear*, 920 F.3d 421 (6th Cir. 2019), is not to the contrary. The panel decision in that case didn't purport to overrule this Court's prior decisions applying intermediate scrutiny. Instead, the Court's narrow holding was premised on the fact that "the requirement that a doctor obtain informed consent to perform an operation is firmly entrenched in American tort law." *Id.* at 436–37 (citing *NIFLA*, 585 U.S. at 770); *see also Schloendorff v. Society of N.Y. Hospital*, 211 N.Y. 125, 129–30 (1914) (Cardozo, J.) (explaining that "a surgeon who performs an operation without his patient's consent commits an assault"). In any event, *EMW* bolsters the conclusion that the Online Auction Law doesn't merely impose an incidental burden on speech. Informed consent laws are triggered when a surgeon performs an operation; the Online Auction Law is triggered by speech. *See supra* at Argument II.A.1.

whenever the government enacts a licensing scheme by statute—regardless of whether the unlicensed professionals are advisors or not. *Third*, the court ascribed significance to the government's motives when enacting the Online Auction Law. But even the purest of motives can't save a law that stifles speech both on its face and in its effect.

The district court erred in believing that *Liberty Coins* was instructive here. Memorandum Opinion, RE 30, Page ID # 261. In *Liberty Coins*, this Court reversed the district court's grant of a preliminary injunction in a facial challenge to the Ohio Precious Metal Dealers Act. That law specified that "no person shall act as a precious metals dealer without first having obtained a license from the division of financial institutions in the department of commerce." *Liberty Coins*, 748 F.3d at 686 (quoting Ohio Rev. Code Ann. § 4728.02). Plaintiffs asserted that the law implicated the First Amendment because it defined a precious metals dealer as a person who is "engaged in the business of purchasing articles made of or containing … precious metals or jewels of any description if, in any manner, including any form of advertisement or solicitation of customers, the person holds himself, herself, or itself out to the public as willing to purchase such articles." *Id.* at 687 & n.1 (citing Ohio Rev. Code Ann. § 4728.01).

This Court disagreed. It noted that the Act regulates all precious metal dealers conducting business that is open, and that the "holding out" provision was enacted

to prevent the statute from applying "far too broadly, to those who make infrequent purchases in casual environments and do not hold themselves out to the public as willing to make such purchases." *Id.* at 692. This Court stressed that the case did "not turn on advertising or solicitation" because persons may hold themselves out to be metal dealers not just through signage, but also by simply "conducting public transactions," "conducting business in a manner that is visible to the public," or "otherwise making its wares available to the public." *Id.* at 692, 697.[11] There was no suggestion that the Precious Metal Dealers Act burdened speech in any other way beyond the provision that defined metal dealers as persons who holds themselves out to the public as willing to buy metals or jewels. For instance, this Court wasn't confronted with the argument that the way the law defined "precious metal dealing" necessarily implicated speech. Nor did the plaintiffs in *Liberty Coins* raise any claim that speech was integral to their work as precious metal dealers.

This case is different. Much like the Precious Metal Dealers Act in *Liberty Coins*, the Online Auction Law prohibits unlicensed individuals from acting as, advertising as, or representing to be an auctioneer. Tenn. Code Ann. § 62-19-

---

[11] At oral argument, the government emphasized that "holding out" was "critically different" from proposing a commercial transaction, which is usually the trigger for commercial speech. *See* Oral Argument, *Liberty Coins v. Goodman*, 13-3012, at 2:10–2:20 (6th Cir., Oct. 11, 2013), available at https://www.opn.ca6.uscourts.gov/internet/court_audio/audSearchRes.php; *cf.* Memorandum Opinion, RE 30, Page ID # 260 (noting that "an auction is as clear an example of commercial speech as one is likely to find").

102(a)(1). But unlike the Precious Metal Dealers Act, the Online Auction Law directly burdens the Online Auctioneers' right to free speech in other ways. *See supra* at Argument II.A.1. For one, as the plain text of the Online Auction Law shows, the law *only* takes effect when there is a specific type of communication between an auctioneer and a member of the audience. Tenn. Code Ann. § 62-19-101(2); *see also* Complaint, RE 1, Page ID # 5 (Gumucio testimony that it's impossible to have an auction without any communication). For another, the Online Auction Law also burdens speech as applied to the Online Auctioneers before this Court. Contrary to the opinion below, the Online Auctioneers has never suggested that "all commercial regulation" implicate the First Amendment. Memorandum Opinion, RE 30, Page ID # 261. Rather, the Online Auctioneers submitted ample evidence at the pleadings stage to show that *they* engage in classic First Amendment activities—crafting narratives, producing videos, and the like—in the course of their work. Complaint, RE 1, Page ID # 5–6; *See* Kimball, RE 14-1; Declaration of Justin Smith, RE 14-2; Declaration of Ron Brajkovich, RE 14-3. The Online Auction Law is thus less like the Precious Metals Dealers Act in *Liberty Coins* and more analogous to the ordinance that prohibited tour guides from working "for profit" in *Billups*. The problem with both the tour guide ordinance in *Billups* and the Online Auction Law here is that they prohibit "activity which necessarily involves speech or expressive conduct." *Billups*, 961 F.3d at 683. The district court acknowledged that, were it not

for its reading of *Liberty Coins*, "an auction is as clear an example of commercial speech as one is likely to find." Memorandum Opinion, RE 30, Page ID # 260. Exactly. Because the statute in Liberty Coins is different in kind than the Online Auction Law, this Court should afford the Online Auctioneers the First Amendment protections that they deserve.

The district court's misgivings about First Amendment protections for the Online Auctioneers might stem from its view that an "auctioneer's speech is no less transactional, and no more protected, than a cashier's or a pharmaceutical wholesaler's." *Id.* at Page ID # 258. That view is mistaken for three reasons.

*Number one*, speech doesn't lose its First Amendment protections merely because it's transactional. *See, e.g.*, *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 39 (2017) (law that regulates merchant speech is subject to First Amendment scrutiny). *Number two*, the district court compared the Online Auction Law to laws governing cashiers or pharmaceutical wholesalers without providing any information about the text or the effect of those hypothetical laws. Had the Court done so, it may reveal that the hypothetical laws don't burden protected speech like the Online Auction Law does here. *See supra* at Argument II.A.1. But the mere fact that a law regulates cashiers or pharmaceutical wholesalers doesn't shield it from First Amendment scrutiny. *See, e.g.*, *Sorrell*, 564 U.S. at 557 ("Speech in aid of

pharmaceutical marketing . . . is a form of expression protected by the Free Speech Clause of the First Amendment.").[12]

*Number three*, the district court thought it unimportant that Online Auctioneers communicate "details about the item and reasons why one might want to purchase it." But laws directly targeting advertising and solicitation plainly implicate the First Amendment. *See Bevan & Assocs., LPA v. Yost*, 929 F.3d 366, 369–70 (6th Cir. 2019) (solicitation); *Norton Outdoor*, 99 F.4th at 842 (advertising); *cf. Liberty Coins*, 748 F.3d at 697 (emphasizing that the result did "not turn on advertising or solicitation"). A critical problem with this law is that it both facially prohibits a specific type of solicitation and, in effect, prohibits the Online Auctioneers from advertising. *See supra* at Argument II.A.1. So the district court might be right that "[a]ll commerce involves communication" at some point, but that observation doesn't excuse all commercial regulations from First Amendment scrutiny. Instead, a court must still engage in the task of discerning whether a law— either on its face or in effect—implicates the First Amendment. *See, e.g.*, *Billups*,

---

[12] For instance, imagine a law (perhaps prompted by a candidate's desire to win a battleground state in a closely contested election) that requires a license for restaurants, waiters, or cashiers to advertise or recommend any food items besides "Philly" cheesesteaks, North Carolina barbecue, or Detroit-style pizza. The law would plainly implicate the First Amendment even though its content-based restrictions on speech take place in the context of routine sales transactions. *Cf. Expressions Hair Design*, 581 U.S. at 46–48 (law implicated the First Amendment even though it applied in the context of sales transactions).

961 F.3d at 683 (rejecting argument that law is exempt from First Amendment scrutiny "because it merely regulates the commercial transaction of selling tour guide services — not the speech of the tour guides" and noting that "it is well-established that a law aimed at regulating businesses can be subject to First Amendment scrutiny even though it does not directly regulate speech").

The district court made a similar error in ascribing significance to the fact that the Online Auction Law imposes a "licensing scheme." Memorandum Opinion, RE 30, Page ID # 259. As the court saw it, "nothing about" the Supreme Court's decision in *NIFLA* brings the government's "licensure authority itself into doubt." *Id.* at Page ID # 256. But *NIFLA* supports the Online Auctioneers' point that government may not have "unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement." *NIFLA*, 585 U.S. at 773; *see also Vizaline*, 949 F.3d at 931. ("*NIFLA* makes clear that occupational-licensing provisions are entitled to no special exception from otherwise-applicable First Amendment protections.").

The district court also attempted to distinguish *NIFLA* on the ground that it pertained to "the government's power to regulate advisory" rather than "transaction-focused" professions." Memorandum Opinion, RE 30, Page ID # 259. Nowhere in *NIFLA* did the Supreme Court suggest that the First Amendment applies with different force to professionals who speak as advisors and ones that speak to sell their products. *Cf. Edenfield v. Fane,* 507 U.S. 761, 766 (1993) (describing the

importance of solicitation in a commercial context and that it is protected under the First Amendment). Instead, the Court's point was to *correct* lower court decisions that have treated professional speech as a "separate category of speech that is subject to different rules." *NIFLA*, 585 U.S. at 767; *see also id.* (finding no basis to "mark off new categories of speech for diminished constitutional protection"). Nothing in *NIFLA* counsels in favor of "diminished constitutional protection" for the professional speech of non-advisors. After all, the First Amendment protects violent video games—even though they hardly bestow life advice to those who play them. *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 804–05 (2011). In all, this Court need not decide whether the Online Auctioneers are the same type of professionals as "doctors, lawyers, nurses, physical therapists, truck drivers, bartenders, barbers, and many others." *NIFLA*, 585 U.S. at 773. This Court need only decide whether the Online Auctioneers' speech is protected by the First Amendment.[13]

Finally, the district court appeared swayed by its belief that the Online Auction Licensing Law was "drafted with the recognition that its *purpose* is to regulate transactions, not speech." Memorandum Opinion, RE 30, Page ID # 257 (emphasis added). Yet it's black letter law that "[i]llicit legislative intent is not the

---

[13] In the end, the district court appeared to acknowledge that, even ignoring *NIFLA*, the Online Auctioneers' claim would have been reviewed under heightened scrutiny but for the court's reading of *Liberty Coins*. Memorandum Opinion, RE 30, Page ID # 259–61.

sine qua non of a violation of the First Amendment." *Minneapolis Star v. Minnesota Comm'r*, 460 U.S. 575, 592 (1983); *Reed*, 576 U.S. at 165 ("A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech.") (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)). In any event, the district court came to its conclusion by noting that "[a] license is not required to work as a copywriter or a graphic designer for an auction company." Memorandum Opinion, RE 30, Page ID # 257. But the same could have been said about the ordinance in *Billups*, which presumably didn't require a license to work as a copywriter or a graphic designer for a tour guide company. The government can't restrict the speech of some individuals merely by pointing to others that it is allowing to speak. Both the Online Auction Law here and the tour guide ordinance in *Billups* burden the speech of the professionals before the Court. Both implicate the First Amendment.

A.   *Heightened Scrutiny Warrants Reversal of the District Court's Decision*

1.   Dismissal is improper in cases involving heightened scrutiny because the government bears the burden of justifying its law

This Court should reverse the district court because dismissal is improper in a case involving heightened scrutiny. This Court's decision in *Kiser v. Kamdar* is instructive. 831 F.3d 784, 785–92 (6th Cir. 2016). The plaintiff there raised a First

Amendment challenge to an Ohio regulation of dental advertising. *See id.* at 785–87. The district court held that there was no First Amendment violation, applied rational basis review, and granted the government's motion to dismiss. *Id.* at 787, 792.

This Court reversed. It held that the plaintiff's complaint properly alleged a violation of his First Amendment right to commercial speech, and the applicable test for considering his claim was intermediate scrutiny. *Id.* at 788. Under that standard, "the government's assertions cannot be taken at face value." *Id.* at 789. Rather, the government bears the burden of satisfying intermediate scrutiny, and the court must scrutinize the government's arguments as they are presented." *Id.* "[A]ctive judicial scrutiny" isn't just mandated by the First Amendment, but also ensures that "commercial speech can continue 'to inform the public of the availability, nature, and prices of products and services, and thus perform an indispensable role in the allocation of resources in a free enterprise system.'" *Id.* (quoting *Bates v. State Bar of Arizona*, 433 U.S. 350, 364 (1977)) (brackets omitted).

This Court should follow the same course in this case. Because the Online Auctioneers' claims are entitled to at least intermediate scrutiny, this Court should reverse the district court's dismissal and remand the case so that the court can consider the evidence.

2. The Online Auction Law cannot survive any form of heightened scrutiny

This Court need not decide whether the Online Auction Law can survive any form of heightened scrutiny at the pleadings stage. *See Kiser*, 831 F.3d at 790. Yet the court below thought there were "substantial grounds for doubting the viability" of the Online Auctioneers' First Amendment claims even as it acknowledged that it "need not answer that question" given its conclusion that First Amendment scrutiny was unwarranted. Memorandum Opinion, RE 30, Page ID # 259, 261. This Court may therefore wish to opine on the proper application of heightened scrutiny to prevent dicta from the district court's opinion from prejudicing the Online Auctioneers on remand. *See Kiser*, 831 F.3d at 788–89 (discussing the proper standard); *see also NetChoice*, 144 S. Ct. at 2394 (setting out the relevant constitutional principles so that the lower courts can perform the necessary inquiry on remand).

Strict scrutiny places the burden on the government to prove that its law furthers a compelling interest and is narrowly tailored to that end. *Reed*, 576 U.S. at 171. It's rare that a law "restricting speech because of its content will ever be permissible." *Brown*, 564 U.S. at 799 (citing *United States v. Playboy Ent. Group, Inc.*, 529 U.S. 803, 818 (2000)). The government can't satisfy this "demanding standard" by proffering "ambiguous proof." *Id.* at 799–800. Under intermediate

scrutiny, the government must show that its law advances a substantial interest, the law advances that interest in a direct and material way, and the law isn't more extensive than necessary.[14] *See Kiser*, 831 F.3d at 788–89 (citing *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980)). "While not as exacting as strict scrutiny, intermediate scrutiny is no gimme for the government: Intermediate scrutiny is still tough scrutiny, not a judicial rubber stamp." *Hines*, 2024 U.S. App. LEXIS 24490, at *17 (cleaned up). "[T]he burden of justification is demanding and it rests *entirely* on the State." *Id.* (citing *United States v. Virginia*, 518 U.S. 515, 533 (1996)) (emphasis in original).

The district court's dictum is inconsistent with the proper application of even intermediate scrutiny for three reasons. *First*, the court below hypothesized that regulations on auctioneering of any sort were justified by "the inherent vulnerability of auctions to fraud." Memorandum Opinion, RE 30, Page ID # 261. But a court "may not simply rely on the government's 'own belief in the necessity for regulation, but must actively scrutinize the evidence and question the government's assertions.'" *Kiser*, 831 F.3d at 789 (quoting *Pagan v. Fruchey*, 492 F.3d 766, 771

---

[14] A different type of intermediate scrutiny applies to regulation of conduct that produces an incidental burden on speech. *See Richland Bookmart*, 555 F.3d at 520 (citing *United States v. O'Brien*, 391 U.S. 366, 377 (1968)). This Court need not engage in that analysis because the Online Auction Law's burden on speech is more than incidental. *See supra* at Argument II.A.2. But even that test places the onus on the government to justify its law. *See Entertainment Productions, Inc. v. Shelby Cnty.*, 545 F. Supp. 2d 734, 741–42 (W.D. Tenn. 2008).

(6th Cir. 2007) (en banc)). The government can't meet its burden with "mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id.* (citing *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995)); *see also Hines*, 2024 U.S. App. LEXIS 24490, at *24–25. ("[T]he State cannot meet its burden of proving real harm by pointing to 'risks' of harm—or hypothetical concerns—that, according to the evidence, have never materialized."); *Edwards v. District of Columbia*, 755 F.3d 996, 1005 (D.C. Cir. 2014) (noting that the Supreme Court has consistently "demanded evidence for the existence of harms" in First Amendment cases) (citing cases).

The government can't meet its burden on the pleading stage, and the record in *McLemore I* casts doubt on its ability to do so down the road. The government's evidence consists of a task force report contradicting the assertion that the unlicensed practice of online auctioneers had been a problem in Tennessee. Complaint, RE 1, Page ID # 6. The task force found that over the three years it had studied, extended-time online auctions like the ones the Online Auctioneers conduct gave rise to only three of the 117 complaints about auctioneers. *Id.* Any *other* evidence would have been readily available to the Commission, as online auctions have flourished in Tennessee for nearly two decades—13 years before the Online Auction Law was

enacted in 2019, and another four years after that pursuant to multiple injunctions in *McLemore I. Id.* The Online Auction Law was driven not by an interest in consumer protection, but by economic protectionism—an interest that flunks any form of review. *See Craigmiles v. Giles*, 312 F.3d 220, 224 (6th Cir. 2002); Tenn. Dep't of Comm. and Ins., Auctioneer Task Force Meeting (Aug. 27, 2018) at 34:25–34:32 (Vice President of the Tennessee Auctioneer Association's observation that "there's a real need to look at oversight for online auctions because we can all agree that's not going to diminish in its activity").[15]

*Second*, the Online Auction Law is inadequately tailored because it contains a host of exemptions that "diminish the credibility of the government's rationale for restricting speech in the first place." *City of Ladue v. Gilleo*, 512 U.S. 43, 52–53 (1994). The Online Auction Law is littered with exemptions. *See, e.g.*, Tenn. Code Ann. § 62-19-103(4) (exempting an "auction conducted by or on behalf of a political party, church, or charitable corporation or association, if the individual conducting the sale receives no compensation and does not . . . hold their self out as available to engage in the sale of goods at auction"). Perhaps the most glaring exemption of all is one that allows eBay to operate merely because the auctions it conducts ends at a fixed time. *See id.* § 62-19-103(9) (exempting any "fixed price or timed listings that

---

[15]   https://www.youtube.com/watch?v=UpDp7OBc0Wc&t=7347s   (last   visited, September 25, 2024).

allow bidding on an internet website, but do not constitute a simulcast of a live auction"); *id.* § 62-19-101(12) (defining "timed listing" as "offering goods for sale with a fixed ending time and date that does not extend based on bidding activity"). The court below thought that extended-time auctions were more similar to conventional auctions and more vulnerable to escalatory bidding strategies, including fraudulent ones. But the burden remains on the government to provide evidence supporting its hypothesis that extended-time auctions are inherently riskier—even though the Task Force compiled more complaints about fixed-time auctions that the law exempts. Complaint, RE 1, Page ID # 6. In all, the Online Auction Law's many exemptions render belief in a consumer protection rationale "a challenge to the credulous." *Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002).

*Finally*, the Online Auction Law can't withstand heightened review because the Commission never tried to "address the problem with less intrusive tools readily available to it." *McCullen*, 573 U.S. at 494. The Commission could have ramped up enforcement of laws protecting consumers against "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a); *see Billups*, 961 F.3d at 688–89. Or it could have adopted a voluntary auctioneer certification program that would encourage consumers to go to online

auctioneers "who satisfy standards established by the [government]— all without infringing the Plaintiffs' free speech rights." *Billups*, 961 F.3d at 690.

In the end, the Commission bears the burden of intermediate scrutiny, and the court must scrutinize its arguments as they are presented, without "supplant[ing] the precise interests put forward by the [Commission] with other suppositions." *Kiser*, 831 F.3d at 789 (citing *Edenfield*, 507 U.S. at 768). The Commission can't meet its burden at the pleadings stage, and the evidence developed in *McLemore I* suggests that it's unlikely to do so. There is thus no reason to doubt the viability of the Online Auctioneers' claim when it is reviewed with the scrutiny required by the First Amendment.

## CONCLUSION

This Court should reverse the district court's judgment dismissing the case and remand this case for further proceedings.

DATED: October 8, 2024

Respectfully submitted,

*s/ Wencong Fa*
Wencong Fa
Ben Stormes
Beacon Center of Tennessee
1200 Clinton Street, #205
Nashville, TN 37203
Tel.: 615-383-6431
wen@beacontn.org
ben.stormes@beacontn.org

*Attorneys for Appellants*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this document complies with the word limit of Fed. R. App. P. 32(a)(7)(b)(i) and 6th Cir. R. 32 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 10,781 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Times New Roman 14-point font.

DATED: October 8, 2024

/s/ Wencong Fa
Wencong Fa

**CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Wencong Fa*
Wencong Fa

**ADDENDUM**

## DESIGNATION OF RELEVANT DOCUMENTS

| Docket Entry | Document Name | PageID# |
|---|---|---|
| 1 | Complaint | 1-16 |
| 14-1 | Declaration of Blake Kimball | 105-107 |
| 14-2 | Declaration of Justin Smith | 108-109 |
| 14-3 | Declaration of Ron Brajkovich | 110-112 |
| 22 | Pltfs' Opp. to Mot. to Dismiss | 202-217 |
| 30 | Memorandum Opinion | 245-262 |
| 32 | Entry of Judgment | 265 |
| 33 | Notice of Appeal | 266 |